# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 29, 2013 at Knoxville

## ANTONIO D. VAUGHN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-D-2752      Cheryl A. Blackburn, Judge**

**No. M2012-00727-CCA-R3-PC - Filed February 20, 2013**

The petitioner, Antonio D. Vaughn, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel due to counsel's failure to adequately communicate with him. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

William H. Stover (on appeal) and Jason Chaffin (at hearing), Nashville, Tennessee, for the appellant, Antonio D. Vaughn.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

Following a jury trial in 2007, the petitioner was convicted of possession of not less than one-half ounce nor more than ten pounds of marijuana with the intent to sell or deliver within 1000 feet of a school, a Class D felony. He was sentenced as a career offender to twelve years at 100%, to be served consecutively to a prior sentence. This court affirmed his conviction on direct appeal, and no application for permission to appeal was filed with the Tennessee Supreme Court. See State v. Antonio Vaughn, No. M2008-01067-CCA-R3-CD, 2010 WL 1462525, at *1 (Tenn. Crim. App. Apr. 13, 2010).

The State's proof at trial established that the petitioner and his cousin, Chance Vaughn,[1] were arrested after their vehicle was stopped for speeding in Nashville and officers discovered a large plastic bag containing 3.8 ounces of marijuana inside the front of Chance's pants. Id. at *1-2. Chance told the officers that the marijuana belonged to the petitioner, which the petitioner initially denied. However, the petitioner later admitted that the marijuana was his and said that Chance was selling it for him. Officers also found $938 in cash on Chance and $367 in cash on the petitioner. Id. at *2. The evidence at trial further established that the location where the petitioner and his cousin were stopped, in the area of 39th Avenue North and Clifton Avenue, was within 1000 feet of McKissack School. Id. at *8.

On November 30, 2010, the petitioner filed a *pro se* petition for post-conviction relief, in which he raised a claim of ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition on May 11, 2011, in which he alleged that pretrial counsel was deficient for failing to communicate with him during critical stages of the proceedings by: (1) not reviewing the evidence the State intended to use at trial; (2) not discussing the petitioner's prior record and how that might impact settlement, trial, or sentencing; (3) not discussing trial strategies and defense theories; (4) not discussing that without the petitioner's testimony there would be nothing to rebut the State's position that the petitioner had made statements implicating himself in the crime; and (5) not discussing that the offense occurred within a school zone and what implications that would have regarding his sentence.

At the June 29, 2011 evidentiary hearing, the petitioner testified that his claims of ineffective assistance of counsel were solely against pretrial counsel, who represented him for about two years before trial counsel was appointed. The petitioner acknowledged that he originally had been charged with a Class E felony, possession of marijuana with intent. The petitioner said that pretrial counsel talked to him "briefly" after his arraignment and told him that his case "wouldn't be no big thing." During their "first discussion date," counsel advised the petitioner that the State had made a plea offer of four years at thirty-five percent, "running consecutive with [his] parole." The petitioner told counsel he did not think that was a good deal because the police officers "didn't get the drugs off of [him]." According to the petitioner, counsel then went "ballistic and said I think you should take this and I am not going to be f'ing around with this case and I ain't really got time for this." The petitioner had no further contact with counsel until his court appearance three months later when counsel informed him the case would be set for trial. A superseding indictment subsequently was issued, increasing his charge from a Class E felony to a Class D felony. The petitioner said

---

[1]Because the petitioner and this witness share the same last name, we will refer to this witness by his first name. We intend no disrespect in doing so.

that counsel never explained the "severity of the crime or that [the petitioner] was going to . . . be charged with a school zone."

The petitioner said that he wrote letters to counsel, but counsel never responded. Counsel sent a copy of the discovery to the petitioner but never met with him to review it. According to the petitioner, he only saw counsel "when they made the offer" and when he had court dates. The petitioner said that counsel never discussed his prior record with him or the risk he was taking in rejecting the State's plea offer. He did not receive another plea offer from the State, and nothing really happened with his case during the two years he was in jail awaiting trial. He told counsel that his cousin would testify on his behalf during the five- to fifteen-minute visit they had the day counsel brought him clothes to try on. Counsel never discussed what their defense theory would be, whether the petitioner would testify, or what his sentencing range would be. Shortly before trial, the petitioner and counsel had a disagreement, resulting in counsel's withdrawal from the case. Trial counsel was subsequently appointed to represent the petitioner and "tried all the way up to the actual trial date" to get plea offers from the State, but the prosecutor "kept refusing."

On cross-examination, the petitioner acknowledged that pretrial counsel "briefly" showed him "behind the glass at the courthouse" the plea offer letter from the prosecutor. Counsel told him that his case would be set for trial if he refused the offer, but he told counsel to "try to get [him] a lesser offer." If he had known that the State was not going to give him a better offer, the petitioner "probably" would have taken the offer. He said he "was just looking for a better offer . . . because the evidence against [him] wasn't no solid evidence." He said he set the case for trial, hoping that "a better attorney" would be able to get him a better offer; however, "no more offers w[ere] given." Asked what he wished pretrial counsel had done, the petitioner said, "Tried to either communicate with me, explain to me the severity of the crime, he never explained to me that I was going to be brought back and re-indicted for a higher offense. He never explained that to me."

Pretrial counsel testified that he had been a licensed attorney since 2001 and that about eighty percent of his practice was criminal defense work. After he was appointed to represent the petitioner, he filed a discovery request. The prosecutor sent him a plea offer letter, along with the discovery response, and counsel sent a copy of both to the petitioner. Counsel identified and read aloud the letter, in which the prosecutor set forth a plea offer of four years as a Range III offender at forty-five percent and stated that if the petitioner rejected the offer, the prosecutor would likely seek a superseding indictment charging a school zone offense. Counsel discussed the plea offer with the petitioner, but the petitioner rejected it. Counsel informed the petitioner several times that he would be charged with a school zone offense with increased punishment, but the petitioner was "quite confident" that a family member was going to claim the drugs and "save the day for [the petitioner]." After the case was set for

trial, counsel received a second letter from the prosecutor advising that a superseding indictment was being sought alleging that the offense occurred within 1000 feet of a school.

On cross-examination, pretrial counsel said that the petitioner's "definition of communication is you must agree and tell him what he wants to hear and agree with everything he says." Counsel stated that the petitioner was very experienced with the criminal justice system and had been in and out of the Department of Correction his entire life. Contrary to the petitioner's testimony, counsel said that he did review the discovery with the petitioner and that the petitioner's request every court date was for counsel to "run out there and beg [the prosecutor] for a better offer." The petitioner wanted counsel to subpoena his cousin, but counsel did not do so because the State already had done so. Counsel had a transcript of the petitioner's cousin's guilty plea hearing prepared so that the petitioner could actually see that his cousin had agreed to testify against him. Counsel said that the petitioner was "adamant that he felt that his cousin was going to come and claim the drugs, which wasn't the case." Counsel discussed with the petitioner what a school zone charge meant and the fact that it required 100 percent service of the sentence. The petitioner subsequently told counsel he wanted a new lawyer.

At the conclusion of the hearing, the post-conviction court took the matter under advisement and subsequently issued a detailed written order denying the petition. Accrediting the testimony of pretrial counsel over that of the petitioner, the court concluded that the petitioner failed to meet his burden of showing that pretrial counsel was in any way deficient in his performance, or that he was prejudiced as a result of pretrial counsel's alleged deficiencies.

## ANALYSIS

The petitioner argues that he received ineffective assistance of pretrial counsel because counsel "did not communicate effectively certain plea offers, investigate potential witnesses, and solicit other offers prior to trial."

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact

and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In its order denying the petition, the post-conviction court concluded:

In reviewing the contradictory testimony, the Court finds pre-trial counsel's testimony to be credible. The Court also is perplexed as to what type of relief Petitioner is seeking – should post-conviction relief be granted Petitioner would be entitled to a new trial, but the trial would be on the superseding indictment that includes the school zone violation; the trial would not be on the original indictment. Petitioner had no complaint about his trial counsel or the way he handled the trial on the superseding indictment charge. Rather, now having been convicted, Petitioner wishes to instead accept the original plea offer extended prior to the superseding indictment or be tried on the original charge. As noted at the post-conviction hearing, this appears to be a case of "buyer's remorse." Upon Court questioning, Petitioner even indicated he felt entitled to another offer once the State sought a superseding indictment.

It is important to note that Petitioner conceded he had received all of his discovery. Pre-trial counsel testified, and the State confirmed, that the D.A.'s letter setting forth the original offer was included with the discovery packet. This letter explicitly states the offer 4 years as a Range III Offender, consecutive to parole violation for a conviction of possession of more than 0.5 ounces of marijuana; the letter also stated that should the case not be resolved on these terms, a superseding indictment would likely be sought. . . .

. . . .

Accordingly, upon reviewing the testimony and exhibits, nothing in the record shows that pre-trial counsel failed to meet with Petitioner to keep him informed of the proceedings or that pre-trial counsel failed to provide Petitioner the information set forth in the State's letter (i.e., the only plea offer and consequence of a superseding indictment). . . .

Petitioner's request for post-conviction relief is denied as to Petitioner's claims that pre-trial counsel failed to communicate with him in that he allegedly did not discuss the charges, potential defenses (namely, Petitioner's request to call his cousin as a witness), or the effect of a superseding indictment. As Petitioner's ineffective assistance claim focused on these grounds, which are all found to lack merit, the Court finds there are no "cumulative" grounds to warrant post-conviction relief.

The record fully supports the findings and conclusions of the post-conviction court. The post-conviction court specifically accredited the testimony of pretrial counsel that he "discussed the case with Petitioner on 'countless court dates'; that he mailed Petitioner the

-6-

discovery along with the D.A.'s letter noting the original offer and consequence of a superseding indictment; that they discussed the potential superseding indictment when Petitioner rejected the initial offer; and that Petitioner's requested witness . . . already had been subpoenaed by the State and would be a State witness." We conclude that the petitioner has failed to prove that the evidence preponderates against the post-conviction court's credibility determination.

## **CONCLUSION**

Based on our review, we conclude that the petitioner has not met his burden of establishing that he was denied the effective assistance of pretrial counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE